No. 65893.—James G. Wiley, a/c William G. Morschauser *v.* United States, protests 59/22333(A) and 59/34425 (Los Angeles).

RAO, Judge:  The protests enumerated above, which were consolidated for purposes of trial, relate to certain imported merchandise invoiced as steel wood

screws, ball head or nob head. The screws covered by protest 59/22333(A) were assessed with duty at the rate of 21 per centum ad valorem, while those covered by protest 59/34425 were assessed with duty at the rate of 19 per centum ad valorem, both pursuant to the provisions of paragraph 397 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, 91 Treas. Dec. 150, T.D. 54108, for articles or wares, not specially provided for, composed wholly or in chief value of iron or steel.

The allegations of the two protests are not the same. In protest 59/22333(A), it is claimed that said screws should be classified in paragraph 338 of said tariff act, as modified by the Torquay Protocol to the General Agreement on Tariffs and Trade, 86 Treas. Dec. 121, T.D. 52739, as screws, commonly called wood screws, of iron and steel, and, therefore, assessed with duty at the rate of 12½ per centum ad valorem.

The claim in protest 59/34425 is for classification within the provisions of paragraph 330 of said act, as modified by the General Agreement on Tariffs and Trade, 82 Treas. Dec. 305, T.D. 51802, as bolts, with or without threads or nuts, with the consequent assessment of duty at the rate of one-half of 1 cent per pound.

Neither the record nor the briefs further allude to said paragraph 330, or tend in any way to suggest the validity of its application to the subject wood screws. On the contrary, it is urged that the wood screws covered by both protests are a form of screws commonly called wood screws of iron or steel, *eo nomine* provided for in paragraph 338, as modified, *supra.* Accordingly, since neither the paragraph nor the rate claimed at the trial is specified in protest 59/34425, and no motion to amend has been filed, the same is dismissed for failure of proof.

With respect to the screws covered by protest 59/22333(A), William G. Morschauser, the ultimate consignee of the merchandise, testified that, in his 13 years of experience in the builders' hardware trade, both importing and selling on a nationwide basis, nob head and ball head screws, if "conical in shape, coming to a gimlet point, with threads on one end, a head on the other, with a slot to be screwed into wood with a screwdriver," are amongst the screws commonly called wood screws. He stated that wood screws may vary in head shapes, and in sizes. They may have oval heads, flat heads, nob heads, or ball heads.

The witness produced two samples of a ball or nob head screw, one representing the merchandise in its imported condition, the other in its condition, after plating. They were received in evidence as plaintiff's collective exhibit 1 and were stipulated to be composed of steel. He also produced several commercial invoices, plaintiff's collective exhibit 2, showing that, in domestic transactions, screws with round heads, ball heads, flat heads, and oval heads may be described as wood screws.

Morschauser further stated that the screws in issue are inserted into wood and are used to engage friction catches in cabinets. So far as he knows, this is their only use and generally they are sold, as indicated by defendant's exhibit A, in a package with a catch and a round head screw. They are not used to hold two pieces of wood together. This witness distinguished wood screws from machine screws by the fact that when a wood screw is driven into wood, it cuts its own thread, whereas a machine screw is driven into a prethreaded hole. He further identified items in defendant's collective exhibit B as an L-hook, a screw eye and hook, and a plain hook, and stated that, although those articles may be driven into wood, they are not wood screws, but are bought and sold, according to length, under the names he used for them. He admitted, however,

that, despite his testimony that wood screws are driven by screwdrivers, lag screws and lag bolts are screws which are driven by means of wrenches.

Basically, it is the contention of the plaintiff that the involved screws are wood screws for the reason that they are used only in wood, are inserted by a screwdriver, and are commonly referred to as wood screws.

Counsel for defendant suggests a construction of the term "wood screws" limited to those which are used to hold things together in a fixed position. It is, therefore, asserted that not every screw which is driven into wood is necessarily commonly called a wood screw.

W[e]re this a matter of initial impression, we doubt that we could ascribe to the provision for wood screws the narrow interpretation urged by the defendant. In our opinion, the term, as defined in standard lexicons, clearly embraces those screws which are ordinarily inserted into wood by means of a screwdriver, and whether they are used for joining, or studding, or to engage a catch, is an immaterial consideration. We need not explore the matter further, however, for the scope of the provision has been thoroughly analyzed by our appellate court in the case of *United States* v. *Astra Bentwood Furniture Co.*, 25 C.C.P.A. (Customs) 340, T.D. 49434, for the purpose of determining the proper classification of certain imported lag screws.

After holding that the phrase "commonly called wood screws" was the substantial equivalent of the more familiar tariff language "commonly known as," the court stated the following, which we quote at length for its relevance here:

When we turn to the definitions and descriptions by standard authorities, it seems clear to us that there is a class of screws, commonly known as wood screws, in which general class are embraced various types having different kinds of heads and dimensions with different numbers of threads per inch, and that these types have names or designations which in many cases are used interchangeably, and we find no sound reason for believing that it was the intention of Congress to narrow the meaning of the phrase "commonly called" to any particular type falling within the general class. If compelled to pick one particular *type*, as distinguished from others of the same general *class*, it would seem that great difficulty in decision would be encountered, and the provision for "screws commonly called wood screws" might be rendered well-nigh meaningless—a thing Congress could not have intended.

Webster's New International Dictionary, 1932, defines wood screw as follows:

A pointed metal screw formed with a sharp thread of comparatively coarse pitch, for insertion in wood. The head is usually slotted for turning with a screw driver. Called also *screw nail*.

One of the leading authorities is Knight's New American Mechanical Dictionary, 1882 and 1883, p. 954. This work defines "wood screw" as follows:

A *square-headed* screw with a coarse thread for fastening together wooden frames. [Italics ours.]

Wood screws . . . Scientific Amer., XI, 24.

The Century Dictionary, Vol. 10, p. 6969, thus defines "wood screw":

A screw specially made for use in fastening together parts of wooden structures or structures of wood and metal. The modern wood-screw has generally a conical point, like that of a gimlet.

Quite often the expression "wood screw" is used interchangeably with the term "lag screw," as is shown by the following definition from Oxford Dictionary, Vol. VI, p. 26:

lag-screw, (a) a flat-headed screw used to secure lags to cylinders or drums; (b) U.S.—*coach screw*. 1873. J. Richards *Wood-working Factories* 26. Almost any kind of shafting can be hung with safety on wood screws, or lag screws, 1875 Knight *Dict. Mech., Lag-machine.*

In Machinery's Encyclopedia, Vol. V, pages 324, 327, 328, we find definitions and descriptions deemed particularly pertinent here as to both wood screws and bolts. At page 324 it is said:

Screws and Bolts. Screws and bolts are used in mechanical work for holding two or more pieces together in a fixed position, or as a means of transmitting motion, as when adjusting one part relative to another. They may be divided into a number of *classes* each of which is particularly applicable to a certain kind of work. These *classes* are known as machine screws, cap-screws, studs, set-screws, bolts, and *wood-screws*. These general classes contain *different forms or types*, owing to variations in the shape of the head, etc. [Italics ours.]

Each of these general classes so named is then described and individual types are given, many of them being illustrated pictorially. Of bolts, the general statement is made:

Bolts.—The difference between a bolt and a screw according to the *generally accepted meaning* of the term, is that nuts are used on bolts, whereas screws are inserted into tapped holes; there are exceptions, however, to this *general* classification. * * * [Italics ours.]

A number of pictorial illustrations of bolts are given, no one of which shows a gimlet-like point or otherwise bears much resemblance to the exhibits on file.

Wood screws are quite specifically discussed and illustrated, thirteen different forms, or types, being shown under designations such as "headless," "dowel," "flat head," "oval head," "round head," etc. The last of the illustrations given under the general head of wood screws consists of a picture which, except for the number of threads (a matter immaterial here), might well be taken as a picture of the pertinent exhibits at bar. It is designated "coach or lag screw" and the text states that it "has a square head instead of a slot, so that it can be turned by a wrench." [All italics in the foregoing quoted.]

While the foregoing suggests that the general function of all screws, whether wood or machine, is to fasten together parts of wood or wood and metal, it does not rule out of the category of screws, articles fitting the descriptions given which are not so employed. Indeed, the first definition cited by the court, namely, that provided by Webster's New International Dictionary, 1932, sets forth the characteristics of wood screws without reference to their use.

It can not be disputed that the items in issue are screws—they are threaded cylindrical metal objects with slotted heads for turning with a screwdriver and, when inserted into wood, the sharpness of their threads cuts corresponding grooves in the wood. Since their only use is in wood, it would seem to follow that they are properly described as wood screws.

We do not think that the circumstance that these screws are solely used as parts of complete fasteners for cabinet doors warrants any different conclusion. When so employed, they do not lose their character as screws merely because the ball or nob shape of the heads permits them to engage the arms of friction catches. Moreover, in the present instance, the screws were imported separately, and, in their imported condition, they fall directly within the scope of the provision for wood screws.

We, therefore, sustain the claim of the plaintiff in protest 59/22333(A) to the effect that the screws covered by the entry to which it relates are dutiable at the rate of 12½ per centum ad valorem, pursuant to the provision in paragraph 338, as modified, *supra*, for screws, commonly called wood screws. All claims in protest 59/34425, for the reasons hereinabove stated, are, however, dismissed.

Judgment will be entered accordingly.